332 So.2d 822 (1976)
Robert HOWELL
v.
WINN PARISH SCHOOL BOARD et al.
No. 57178.
Supreme Court of Louisiana.
May 17, 1976.
Rehearing Denied June 18, 1976.
*823 Bobby L. Culpepper, Baker, Culpepper & Brunson, Jonesboro, for plaintiff-applicant.
William J. Guste, Jr., Atty. Gen., Charles B. Bice, Dist. Atty., Kermit M. Simmons, Asst. Dist. Atty., for defendants-respondents.
CALOGERO, Justice.
We granted writs in this case to consider the contention of Robert Howell that his dismissal as a tenured employee of the Winn Parish School Board violated the provisions of the Louisiana Teachers' Tenure Law, La.R.S. 17:441 et seq.
After an administrative hearing on the question, the Winn Parish School Board dismissed plaintiff as principal of the Atlanta High School in Atlanta, Louisiana, and as an employee of the Winn Parish School Board, finding him guilty of wilful neglect of duty. Pursuant to the provisions of La.R.S. 17:443 B.,[1] which authorize a tenured employee to petition court for a full hearing to review the action of the school board, plaintiff filed suit requesting that he be reinstated and awarded a monetary judgment for back salary and attorney's fees.[2] The district court dismissed the suit and the Court of Appeal affirmed. Howell v. Winn Parish School Board, 321 So.2d 520 (La.App.2d Cir.1975)
Plaintiff had been employed by the Winn Parish School Board for a sufficient period of time to have qualified as a tenured employee under the provisions of La. R.S. 17:441-442, and had served as the principal of the Atlanta High School for several years prior to his dismissal on April 15, 1974. Proceedings to dismiss plaintiff were initiated by E. H. Farr, at that time the Superintendent of Winn Parish Schools. In a letter dated March 11, 1974, Mr. Farr recommended that plaintiff be dismissed for wilful neglect in the performance of his duties, charging that Mr. Howell had been absent from the Atlanta High School during the final week of the *824 1972-73 school year. He alleged that because of this absence "a student employed for Atlanta High School through the [Neighborhood Youth Corps] N.Y.C. program was left without assignment of duties and without supervision of work," and that he had "to assume the duties of principalship, including the signing of checks, until such time as his substitute could be employed." A 1967 resolution adopted by the Winn Parish School Board had "established the school year for principals as a ten month period beginning two weeks before the opening day of school and ending two weeks after the closing day of school." Monday, June 11, 1973 to Friday, June 15, 1973, the period at issue in this case, was the second week following the closing of school.
The trial court held that there was substantial evidence to support the school board's finding that plaintiff was absent for the week in question without permission and, on this basis, affirmed the decision of the board. After reviewing conflicting testimony with respect to whether plaintiff had permission to be absent, the Court of Appeal concluded that this was a factual issue involving credibility and that as the board's finding was not manifestly erroneous it should not be disturbed. They then held that this conduct did constitute "wilful neglect of duty," noting as follows:
"We have examined all cases cited by counsel in brief and do not find that any are sufficiently analogous factually to define what conduct constitutes `wilful neglect of duty.'
"Although the evidence does not show any real or serious harm was caused by plaintiff's absence for the week in question and though his dismissal under the circumstances could be termed harsh, we nevertheless are of the opinion such a dereliction is sufficient to authorize the board to exercise its discretion to terminate the employment."
La.R.S. 17:443 A provides, in relevant part, that "[a] permanent teacher shall not be removed from office except upon written and signed charges of wilful neglect of duty . . . and then only if found guilty after a hearing by the school board of the parish . . .."[3] As previously noted, an aggrieved employee may "petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the courts shall have jurisdiction to affirm or reverse the action of the school board in the matter" (emphasis added) La.R.S. 17:443 B. While this clause by its terms provides for review by the courts and not a trial de novo, see Campo v. East Baton Rouge School Board, 231 So.2d 67, 71 (La.App.1st Cir.1970) and Granderson v. Orleans Parish School Board, 216 So.2d 643, 646 (La.App.4th Cir.1969), the requirement of a full hearing indicates that the legislature intended the courts to exercise a broad scope of judicial review, particularly at the district court level. See Work of the Louisiana Appellate Courts for the 1972-73 Term, 34 La.L.Rev. 197, 306 (1974). Thus in lewing v. De Soto Parish School Board, 238 La. 43, 113 So.2d 462 (1959), this Court noted that under the provisions requiring a full hearing at the district court level, a discharged employee of a school board could present additional evidence to that court.[4]
Despite this provision for a full hearing before the district court, the standard of judicial review of a school board's *825 action is still whether there is a rational basis for the board's determination supported by substantial evidence insofar as factually required. In such cases, the reviewing court must neither substitute its judgment for the judgment of the school board nor interfere with the board's bona fide exercise of discretion. Lewing v. De Soto Parish School Board, supra; State ex rel. Rathe v. Jefferson Parish School Board, 206 La. 317, 19 So.2d 153 (1944); Simon v. Jefferson Davis Parish School Board, 289 So.2d 511 (La.App.3d Cir.), writ denied, 293 So.2d 178 (La.1974); Jennings v. Caddo Parish School Board, 276 So.2d 386 (La.App.2d Cir.1973). Thus in the instant case, this Court will limit its inquiry to a determination of whether the action of the school board was (1) in accordance with the authority and formalities of the Louisiana Teachers Tenure Act, and (2) supported by substantial evidence, or conversely, an arbitrary decision and thus an abuse of discretion. Lewing v. De Soto Parish School Board, supra; Celestine v. Lafayette Parish School Board, 284 So.2d 650 (La.App.3d Cir.1973); Moffett v. Calcasieu Parish School Board, 179 So.2d 537 (La.App.3d Cir.1965).
The record of the hearing before the school board, and the transcript of the testimony and evidence presented to the district court reflect the following:
Plaintiff Robert Howell had requested and been granted a sabbatical leave for the 1973-1974 school year. At the school board hearing and before the district court, Mr. Howell testified that he had received permission from Mr. E. H. Farr, the Superintendent of Winn Parish Schools, to be absent during the week of June 11, 1973 to June 15, 1973 in order to register for summer school.[5] Ms. LaRue Waxley, an employee of the Winn Parish School Board at the time in question, testified that she overheard a conversation between plaintiff and Mr. Farr during which Mr. Farr told plaintiff it would be alright for him to be absent to register for school.
Plaintiff further testified that prior to the week in question he had completed all his final reports for the year and had turned them in to the Winn Parish School Board Office; that he had made arrangements with Mr. Prentis Ferguson, an agriculture teacher at the Atlanta High School, to act as principal during his absence, as was customary; and that on the Friday prior to the week in question, he took his school keys to the home of Mr. Collins, a school board member whose wife, Ms. Dorothy Collins, was plaintiff's secretary. Mr. Ferguson verified that he had agreed to act as principal and Mr. Farr admitted that Mr. Ferguson generally acted in this capacity during Mr. Howell's absences.[6]
With respect to the lack of supervision of the student employed in the N.Y.C. program, a letter to the Winn Parish Police Jury, which sponsored the program, showed that Mr. Howell had appointed Ms. Ruby Hamlin, the librarian at the Atlanta High School, as supervisor of the student involved. The evidence indicated that it was the usual policy for a principal to appoint some one to supervise the participants of this program. Ms. Hamlin was apparently attending a workshop during the week in question, but Ms. Delois Roe, the N.Y.C. student, testified that she was adequately supervised by Mr. Ferguson.
Plaintiff Howell also testified that he went by the school from time to time during *826 that week: early on Monday to verify that the building was secure, and again about 12:30 p.m., after he had been to Northwestern; on Wednesday when he talked to his secretary; and on Friday when, by the school board's own admission, he signed two checks. Mr. Ferguson testified that he saw Mr. Howell on at least one day that week, although he could not remember exactly when. Ms. Collins, while not denying that plaintiff had come by the school, testified that she did not "remember" seeing Mr. Howell that week.
Mr. Farr, the school superintendent, denied giving plaintiff permission to be absent during the week in question, stating that Mr. Howell had only brought him a letter asking for sabbatical leave.[7] He testified that on a routine visit to the Atlanta High School on Monday, June 11, 1973, he inquired of plaintiff's whereabouts and was told by Ms. Collins, the school secretary, that Mr. Howell had already left for the summer to register for summer school; that Mr. Ferguson was at the school at the time acting as principal; that the N.Y.C. student was sitting in the principal's office with nothing to do; and that as Mr. Ferguson did not have authority to sign checks, it was necessary for him to sign several checks to pay some outstanding bills. Everyone concerned testified that there was no immediate need for the checks to be signed at that time, other than Ms. Collins' desire to finish her paperwork.
While we do not disagree with the findings of the school board and the district court that Mr. Farr did not specifically authorize plaintiff's absence during the week in question, we note supplementally that Mr. Farr never expressly told Mr. Howell that he would not be permitted to be away from his school at that time. We are thus required to assess Mr. Howell's conduct in relation to the week of Monday, June 11, 1973 to Friday, June 15, 1973 and to determine whether as a matter of law and fact it constitutes wilful neglect of duty.
Under the facts as developed by the school board and the district court, we conclude that there was no substantial evidence to establish that as a matter of law and as a matter of fact, Mr. Howell wilfully neglected his duty as principal of the Atlanta High School during the week in question. Even accepting Mr. Farr's statement that he did not give plaintiff express permission to be absent, the facts on the record indicate that Mr. Howell made adequate provisions to insure that his responsibilities were carried out. With respect to the specific charges leveled against plaintiff, the record reveals that Ms. Ruby Hamlin had been appointed by Mr. Howell to supervise the N.Y.C. student's work; that arrangements had been made for Mr. Prentis Ferguson to act as principal; and that, with respect to the only function which Mr. Ferguson could not perform as principal, i.e., the signing of checks, Mr. Howell did return to the school during the week and signed several checks on Friday, June 15, 1973.[8] As Mr. Farr himself stated when questioned about whether there was an established school board policy with respect to the hours a principal was to keep during the week in question, "on the two week period that school is out the principals are required to put in as many hours as is necessary to carry out their work." Nothing in the record indicates *827 that Mr. Howell did not carry out his work or that any adverse consequences ensued insofar as the school board was concerned. While there might have been reasons why a principal should be present on the school premises during the week in question, the record before us does not establish what these duties or responsibilities are. Rather the record indicates that a principal's job during that period is of a supervisory nature and that a principal need not put in a prescribed work period, but only such time as is found necessary.
The law requires the charges against a tenured employee to be in writing. La.R.S. 17:443A. See Simon v. Jefferson Davis Parish School Board, 289 So.2d 511, 515 (La.App.3d Cir.), writ denied, 293 So.2d 178 (La.1974); Johns v. Jefferson Davis Parish School Board, 154 So.2d 581, 584 (La.App.3d Cir. 1963). The charges against plaintiff were that he was absent from school without prior authorization, leaving a student worker unsupervised and some checks unsigned. On these limited grounds, and the facts shown, we find no substantial evidence of wilful neglect of duty by Mr. Howell.
The Louisiana Teacher Tenure Act is designed to protect the job security of teachers and the statute should, therefore, be liberally construed in favor of the class of person intended to be its primary beneficiaries, the tenured employees. See Palone v. Jefferson Parish School Board, 306 So.2d 679 (La.1975); Lewing v. De Soto Parish School Board, 238 La. 43, 113 So.2d 462 (1959); Lea v. Orleans Parish School Board, 228 La. 987, 84 So.2d 610 (1955). We feel that the foregoing principle dictates our result in the instant case, taking into consideration the minimal allegations contained in the written charges against plaintiff and the lack of any substantial evidence that he failed to discharge his responsibilities as principal of the Atlanta High School or that he otherwise wilfully neglected his duty.
For the foregoing reasons, the judgment in favor of the Winn Parish School Board et al and against Mr. Robert Howell is reversed. The case is remanded to the trial court for further proceedings not inconsistent with this opinion.
Reversed and rendered.
SUMMERS, J., dissents for the reasons assigned.
DENNIS, J., is recused because he performed a judicial act in the case in another court. L.C.C.P. Art. 151(3).
SUMMERS, Justice (dissenting).
I cannot agree that the decisions of the School Board, the trial judge in the district court and the Court of Appeal on this purely factual matter involving the credibility of witnesses should be reversed. I agree with the opinion of the Court of Appeal. See 321 So.2d 420.
NOTES
[1] La.R.S. 17:443B. provides in full as follows:

"If a permanent teacher is found guilty by a school board, after due and legal hearing as provided herein, on charges of wilful neglect of duty, or of incompetency, or dishonesty, or of being a member of or of contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the State of Louisiana, and ordered removed from office, or disciplined by the board, the teacher may, not more than one year from the date of the said finding, petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter. If the finding of the school board is reversed by the court and the teacher is ordered reinstated and restored to duty, the teacher shall be entitled to full pay for any loss of time or salary he or she may have sustained by reason of the action of the said school board." (Emphasis added)
[2] Plaintiff had also requested that the school board be enjoined from dismissing him. Prior to trial the parties entered into a stipulation that the matter was being tried and submitted to the court on the merits.
[3] "Teacher" is defined as "any employee of any parish or city school board who holds a teacher's certificate and whose legal employment requires such teacher's certificate." La.R.S. 17:441.
[4] The Court also held that, unless a teacher chooses to introduce additional evidence, the school board is confined to the record on which it acted. This is so because the board "should not be allowed to prove its cases in the district court." Lewing v. De Soto Parish School Board, 238 La. 43, 113 So.2d 462, 465 (1959).
[5] Records from Northwestern State University in Natchitoches, Louisiana established that Mr. Howell did register for summer school on Tuesday, June 12, 1973. Mr. Howell testified that on Monday, June 11, 1973 he had gone to the university to discuss his program with Dr. Robert Dennis, that he registered the next day and that he had classes the rest of the week. Dr. Dennis verified the program discussion with plaintiff.
[6] The evidence established that if Mr. Ferguson had not accepted this responsibility he would have been on vacation during the week in question. Mr. Ferguson was not paid by the school board for this accommodation of Mr. Howell.
[7] While Mr. Farr denied ever discussing the absence with Mr. Howell, on cross-examination Mr. Farr indicated that at least some conversation on the question had taken place:

"Q O.K., and you don't remember any other conversations of this nature or along these lines with Mr. Howell?
A I felt like of Mr. Howell had wanted permission to be off that week, we had a board meeting the week before, June something the early part of June . . .
Q So you told him . . .
A And he could have ask the Board.
Q You told him this?
A That's right."
[8] As previously noted, the testimony revealed that there was no particular reasons requiring the checks to be signed any earlier in the week.